*752 OPINION.
Graupner:
The Commissioner contests the claim of the taxpayers for deduction of their respective portions of the asserted bad debt of the copartnership upon the following grounds: (1) That the debt was not that of the copartnership but was one of the Trust Co; • (2) that the debt was not properly ascertained to be worthless in 1918; and (3) that the debt was not charged off in the year 1918.
If the Commissioner is correct in his first contention, the claims of the taxpayers must fall. Therefore, we must first determine whether the debt was properly that of the copartnership.
When the first loans and advances were made to Waite in January of 1910 and until June 30, 1910, the account was carried on the books of the Portland office of the copartnership. On June 30, 1910, the account was transferred to the books of the Trust Co. which had been formed to carry on the details of the land and loan business of the Portland office of the copartnership and was conducted as a department in such office. The transfer was made as a matter of office convenience in order that the Trust Co. might do the accoimting and have general supervision over the loan. The moneys that had been advanced and were advanced until December 31, 1915, were from the funds of the copartnership. On December 31, 1915, the account was retransferred to the books of the copart-nership, and was continued on such books until it was finally charged off on December 31, 1918. This change was made because the co-partnership concluded that it was not suitable to carry accounts of its loans on the books of the Trust Co. Such accounting misrepresented the financial condition of both the copartnership and the Trust Co. The loans and advances were made directly from the funds of the copartnership to Waite or the Orchards Co., and it was but proper that its books should truly reflect the outlay and the debt.
As a matter of fact, the Trust Co. was never the owner of the debt, not even when it carried the account on its books. The loans and advances were made directly by the copartnership and accounting by the Trust Co. could not change the source of the funds. The fact that the Trust Co. held the notes and securities as trustee for the copartnership did not vest it with such right to collect the debt or realize on the securities as would deprive the copartnership of its right to recover any and all amounts paid on the indebtedness. The existence of the relation of trustee to trustor does not deprive the trustor of its right to profit or loss, nor does it raise a bar which will prevent the trustor from claiming its property.
To sustain the Commissioner’s contention that the debt was one due the Trust Co. we must hold that the book transfer of June 30, 1910, was an actual transfer of ownership of the debt, and that the *753 transfer of December 31,1915, was of no effect. This we can not do. We must hold that in 1918 the debt was one due to the copartnership and not to the Trust Co.
It now devolves upon us to decide whether the debt was properly-determined to be worthless in 1918. To do so we must consider what the debt was and what was the value of the securities held on behalf of the copartnership. The total amount of the debt was $220,879.91. There was the note of Waite for $142,525.59 as evidence with the pledge of (1) 1,000 shares of stock of the Orchards Co., and (2) four promissory notes of L. D. Kinney, which were secured by mortgages upon property in Coos County, and the note of the Orchards Co. for $200,000, secured by a mortgage upon the lands, of that corporation. The evidence shows that the notes of Kinney and the mortgages given by him as collateral thereto had become worthless; that he was insolvent and mentally incapacitated, and that nothing could be recovered from him. A thorough investigation of Waite, and his own admission, showed that he, too, was insolvent and that his promissory note was valueless. There remained the security of the 1,000 shares of Orchards Co. stock on Waite’s note and the note of the Orchards Co. with the mortgage given as security thereon. The Orchards Co. had no assets other than the land. The land, therefore, was the real and only security for the debt, and until it was sold the amount of the debt of Waite and the Orchards Co. could not be ascertained. Under section 234(a) (5) of the Revenue Act of 1918 the copartnership could not charge off as worthless a portion of the debt. Appeal of Steele Cotton Mill Co., 1 B. T. A. 299; Appeal of Egan & Hausman Co., 1 B. T. A. 556; Appeal of The Murchison National Bank, 1 B. T. A. 617.
During December of 1918 negotiations were opened with Waite to close the matter. He admitted his inability to pay. The co-partnership had the lands of the Orchards Co. appraised and found that the reasonable market value thereof was $50,0-00. By agreement between Waite, the Orchards Co., the copartnership, and the Trust Co., the properties of the Orchards Co. were sold and conveyed on December 31,1918, to the Trust Co. for the sum of $50,000, which was paid to the copartnership and applied by it on account of the debt, thus reducing it to the sum of $170,879.91. This transaction erased all value which the note and stock of the Orchards Co. might have had. The debt was without security and the debtors were insolvent. At the time this transaction was concluded, and not until then, the copartnership was in a position to determine the amount of the bad debt. From research previously made and knowledge had at the time it was in a position promptly to determine the worthlessness of the debt. This it immediately did and *754 wrote off the amount on the books of the Portland office of the co-partnership. "We can not but conclude that the determination of the worthlessness of the debt was made in 1918 and could not have been made prior to the liquidation of the security held by it on December 81, 1918.
The remaining point relied upon by the Commissioner appears to us to be without merit. There is no dispute of the fact that the loss was written off on the books of the Portland branch office on December 31, 1918. However, because the main office was in San Francisco and it was manifestly impossible for the copartnership to write off on those books the loss on December 31, the Commissioner contends that the debt was not “ charged off within the taxable year.” The law does not contemplate unreasonable things. The proper entries charging off the sum of $170,879.91 were made on the general books of the copartnership within a reasonable time and before its books were closed for the calendar year 1918. This is sufficient to comply with the requirements of the statute.
We must therefore disallow those portions of the deficiencies determined by the Commissioner against the above-named taxpayers which result from the disallowance of the bad debt in issue.
ARitndell not participating.